[Cite as *S. Euclid v. Woodland*, 2026-Ohio-2938.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF SOUTH EUCLID,                  :

    Plaintiff-Appellee,          :

                                       No. 115832

v.                                     :

SEAN WOODLAND,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 30, 2026

---

Criminal Appeal from the South Euclid Municipal Court
Case No. 24CRB00649

---

### *Appearances:*

Brian M. Fallon, South Euclid Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Sean Woodland ("Woodland") appeals from his conviction for domestic violence following a bench trial. For the following reasons, we affirm.

## I. Factual and Procedural History

{¶ 2}   On December 30, 2024, victim M.G. filed a complaint in South Euclid Municipal Court alleging that Woodland had committed domestic violence against her in violation of R.C. 2919.25(A).  M.G. obtained a domestic violence order of protection, and a warrant was issued for Woodland's arrest.

{¶ 3}   Woodland was arrested and initially pleaded not guilty.

{¶ 4}   The case proceeded to a bench trial.  The city called M.G., who testified that on December 28, 2024, she was at the Legacy 5 Lounge in South Euclid, Ohio, with three female friends for a birthday party.  M.G. testified that shortly after 10:00 p.m., she saw Woodland.  The following exchange occurred:

THE CITY:  Okay. And how do you know Sean Woodland?

M.G.:  Ex-boyfriend.

THE CITY:  Okay. And by ex-boyfriend what do you mean?

M.G.:  We was together for a year and a half.  We lived together for a year and a half.

THE CITY:  Okay. This was an intimate relationship?

M.G.  Yes.

(Tr. 8.)  M.G. explained that the relationship occurred in 2020 and 2021.

{¶ 5}   M.G. described the events that occurred that evening as follows:

M.G.:  I was sitting at the table. [Woodland] walked in.  He came to the table where I was sitting with me and my friends. He pulled my hair. He grabbed me by my ponytail. I told him to move out the way. Moved his hand. Told him to leave me alone. He continued to talk. One of my friends stood up and told him, "Let's walk away. Let's talk." I saw them having a conversation. He started crying. She was still talking to him. He started getting loud and belligerent so I told my friends like, "Hey, we need to leave. Let's go."

THE CITY: Okay. And so did you attempt to leave at that point?

M.G.: I did, but he was getting louder so I went back on the other side of the bar to get his brother and his cousin and I asked him to walk out with me because he was cursing and belligerent.

. . .

THE CITY: Okay. All right. And tell us what happened when you got outside.

M.G.: When I got outside, he walked down to the other end of the parking lot. I walked to my car. I was — as I was backing out the parking lot, he came to my window and pulled a gun out. He walked around my car with the gun, pulled me out of my car, threw me to the ground and put a gun to my head.

THE CITY: Okay. And what color was the gun?

M.G.: Black.

THE CITY: Okay. And how was he able to get your car door opened?

M.G.: It was unlocked.

THE CITY: Okay. And he threw you to the ground did you say?

M.G.: He threw me to the ground and put the gun to my head and said, "You're going to talk to me." And he kept asking me if I slept with the guy that shot him.

(Tr. 10-12.)

{¶ 6} M.G. testified that she believed multiple people, including one of her friends, called the police. M.G. testified that Woodland sped out of the parking lot, and she waited until police arrived and told them what had happened. M.G. subsequently went to the police station and filed a report.

{¶ 7} The city also called South Euclid police corporal Shauna McCann ("Corporal McCann") to testify at trial. Corporal McCann testified that she

responded to Legacy 5 Lounge on December 28, 2024, following several 911 calls regarding an altercation involving a man and a gun. Corporal McCann testified that she spoke to the security guard outside the bar and M.G., who explained what happened. Corporal McCann further testified that she instructed M.G. to go to the police station and make a report, and M.G. identified a Bureau of Motor Vehicles photo of Woodland at the police station. Corporal McCann described M.G. as "very upset" when she interviewed her. (Tr. 59.) Corporal McCann stated that they had a description of Woodland's vehicle, but they were unable to locate Woodland, his vehicle, or his firearm that evening.

{¶ 8} According to Corporal McCann, M.G.'s trial testimony generally corresponded with how she described her interaction with Woodland when she was interviewed the evening of the incident. The only difference Corporal McCann noted was that on the night of the incident, M.G. said that Woodland had threatened her through the car window to open her door. (Tr. 62.) She followed this up by stating that M.G. could have been confused because it had "been a while" since the incident. (*Id*.) Corporal McCann testified that the security guard told her that there had been an altercation with a man who had a gun. Two of M.G.'s friends also told police that the man had a gun.

{¶ 9} The city also called South Euclid police detective Chris Cooper ("Detective Cooper"), who testified that he was asked to locate Woodland and obtain video evidence in connection with the underlying case. Detective Cooper testified that Legacy 5 Lounge did not have any video footage of the incident. He further

asked three businesses in the same strip mall as the Legacy 5 Lounge for surveillance footage, but none of the businesses had video of the incident because their cameras only captured the immediate areas in front of their stores. Detective Cooper testified that he located Woodland's vehicle through Flock security cameras.

{¶ 10} At the close of the city's case, defense counsel made a Crim.R. 29 motion. The court denied this motion. Woodland did not present any evidence in his defense.

{¶ 11} The court found Woodland guilty of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The court referred Woodland for a presentence investigation.

{¶ 12} At the sentencing hearing, the court heard from M.G., the assistant prosecuting attorney, defense counsel, and Woodland. The court sentenced Woodland to 180 days in jail; the court suspended 178 days and determined that Woodland was entitled to two days of jail-time credit. The court also imposed a $1,000 fine and suspended $500. The court also imposed two years of probation and ordered that Woodland have no contact with M.G. during that period.

{¶ 13} Woodland appealed. He now raises two assignments of error for our review:

I. The evidence is insufficient to sustain a finding of guilt.

II. The convictions are against the manifest weight of the evidence.

## II. Law and Analysis

## A. Sufficiency of the Evidence

{¶ 14} In his first assignment of error, Woodland argues that the city presented insufficient evidence to sustain the trial court's finding of guilt. Specifically, Woodland argues that the city did not allege or prove that he was a family or household member of M.G.'s as it was required to do pursuant to R.C. 2919.25(F). We disagree.

{¶ 15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 16} With a sufficiency inquiry, an appellate court does not review whether the prosecution's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 36 (Cook, J., concurring). A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at ¶ 23. Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and

all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.).

{¶ 17} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The statute defines "family or household member" as any of the following:

> (a) Any of the following who is residing or has resided with the offender:
>
> (i) A spouse, a person living as a spouse, or a former spouse of the offender;
>
> (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;
>
> (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
>
> (b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

R.C. 2919.25(F)(1). Further, "person living as a spouse" is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 18} Woodland argues that the city did not present sufficient evidence that Woodland and M.G. were cohabiting pursuant to R.C. 2919.25. The Ohio Supreme Court has found that the essential elements of "cohabitation" are "(1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio

St.3d 459, 465 (1997). Further, this court has found that where "there was evidence that the defendant and victim lived together, even if only for 'several months,' the state was not required to prove cohabitation through evidence of financial or familial responsibilities and consortium." *State v. Jackson*, 2023-Ohio-455, ¶ 78 (8th Dist.), quoting *State v. Reidel*, 2017-Ohio-8865, ¶ 86, citing *State v. McGlothan*, 2014-Ohio-85, ¶ 15.

{¶ 19} Here, M.G. testified that she and Woodland were in an "intimate" relationship for a year and a half and that they lived together for the same length of time. This evidence is sufficient to establish cohabitation for purposes of R.C. 2919.25. Woodland points to the fact that M.G. testified that Woodland did not share financial responsibilities for their household during their relationship and the fact that she was reluctant to say that she loved him while testifying during his domestic violence trial. Neither of these facts undermines the evidence that they were cohabiting for purposes of R.C. 2919.25. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Woodland and M.G. were cohabiting when they were living together and in a romantic relationship in 2020 and 2021.

{¶ 20} Because the city presented sufficient evidence that Woodland committed domestic violence in violation of R.C. 2919.25(A), Woodland's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 21} In his second assignment of error, Woodland argues that his conviction was against the manifest weight of the evidence because M.G.'s testimony against him at trial was not corroborated by her friends or by any video evidence. Woodland also argues that M.G. was the only person at the scene who mentioned the presence of a firearm. We are not persuaded by these arguments.

{¶ 22} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "'A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which evidence weighs heavily against conviction."'" *State v. Travis*, 2022-Ohio-1233, ¶ 28 (8th Dist.), quoting *State v. Crenshaw*, 2020-Ohio-4922, ¶ 243 (8th Dist.), quoting *Thompkins* at ¶ 25.

{¶ 23} "'Minor inconsistencies in witness testimony will not render a conviction so against the manifest weight of the evidence as to cause a miscarriage of justice.'" *State v. Solomon*, 2021-Ohio-940, ¶ 64 (8th Dist.), quoting *State v. McNamara*, 2016-Ohio-8050, ¶ 38 (8th Dist.).

{¶ 24} Woodland points to no authority for his assertion that corroboration is required to sustain his conviction. Further, despite Woodland's arguments to the contrary, our review of the record shows that police received multiple 911 calls

referencing a man with a gun. Additionally, Corporal McCann testified that the security guard and two of M.G.'s friends stated at the scene that the man involved had a gun. This corroborates M.G.'s version of events. Finally, Corporal McCann testified that with one minor discrepancy, M.G.'s trial testimony mirrored her account of the incident shortly after it occurred. Following a thorough review of the record, we cannot conclude that this is the exceptional case in which the evidence weighs heavily against conviction.

{¶ 25} Because Woodland's conviction is not against the manifest weight of the evidence, his second assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

EMANUELLA D. GROVES, P.J., and
ANITA LASTER MAYS, J., CONCUR